# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2228 | **DATE** | 11/22/2004 |
| **CASE TITLE** | Ethel J. Surratt vs. Chicago Transit Authority | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion (34-1) is denied as to strike defendant's reply memorandum and is denied as moot as to strike defendant's motion to strike. Defendant's motion to strike (31-1) is denied as moot. Defendant's motion for summary judgment (21-1) is granted. Court enters judgment in favor of defendant Chicago Transit Authority and against plaintiff Ethel J. Surratt. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | **NOV 23 2004** | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 37 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/22/2004 | |
| | | | date mailed notice | |
| CW | courtroom deputy's initials | | cw | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ETHEL J. SURRATT, )
)
Plaintiff, )
)
v. ) No. 03 C 2228
) Paul E. Plunkett, Senior Judge
THE CHICAGO TRANSIT AUTHORITY, )
)
Defendant. )

DOCKETED
NOV 2 3 2004

## MEMORANDUM OPINION AND ORDER

Ethel Surratt ("Plaintiff") filed suit against her employer, the Chicago Transit Authority ("CTA" or "Defendant"), under 42 U.S.C. § 2000e-2, claiming she was involuntarily placed on long-term disability because of her gender. The CTA has filed a Federal Rule of Civil Procedure 56 motion for summary judgment, arguing that Surratt lacks sufficient evidence to prove discrimination. After careful review of the evidence, we find that Surratt has managed to present sufficient evidence to establish a weak prima facie case of discrimination, but she has presented insufficient evidence from which a fact finder could reasonably conclude that the CTA's proffered non-discriminatory reasons for placing her on disability were pretextural. Accordingly, Defendant's Rule 56 motion for summary judgment is granted.[1]

---

[1] Plaintiff has asked us to strike Defendant's reply memorandum of law in support of its motion for summary judgment because Defendant's brief employs nonstandard spacing. Because Defendant's brief uses one and one half line spacing as permitted by Local Rule 5.2, we deny Plaintiff's motion to strike Defendant's reply memorandum. We also deny Defendant's motion to strike portions of Plaintiff's documents in response to its motions for summary judgment. Because we did not rely on those responses in deciding this motion for summary judgment, the motion to strike is moot. As a result, Plaintiff's motion to strike Defendant's motion to strike is also denied as moot.



## Facts

The following facts are undisputed unless otherwise noted. Ethel Surratt began working for the CTA in 1990 as a rail janitor, responsible for cleaning CTA stations and platforms and removing garbage and snow. (Pl.'s L.R. 56.1(b) Stmt. ¶ 143.) A highly regarded employee, Surratt worked her way up through the system to become a salaried rail janitor coordinator, who supervised the efforts of a group rail janitors. (*Id.* ¶¶ 148, 153.)

In February 2001, she learned that Mark Bonk would be her new supervisor. (Def.'s L.R. 56.1(a) Stmt. ¶ 51.) The news was upsetting to her, as her two previous encounters with Bonk made it clear to her that he did not respect her. (*Id.* at 47–53.) She had even heard that he intended to fire her if she ever worked for him. (Pl.'s L.R. 56.1(b) Stmt. ¶ 206.) The transfer made her so anxious that she went to see her doctor about job-related stress. (Def.'s L.R. 56.1(a) Stmt. ¶ 51.) The doctor wrote a letter to the CTA asking them to reduce that stress. (*Id.*) Bonk received the letter while Surratt was on vacation leave and forwarded it to CTA's medical department. (*Id.* ¶ 54.)

On her first day of working for Bonk, he told her he had concerns about her diabetes, a condition she had never shared with him. (Pl.'s L.R. 56.1(b) Stmt. ¶ 155.)[2] He told her to go to CTA's medical department. (*Id.* ¶ 156.) On March 1, the doctors there found her unfit to fulfill her duties, though she felt ready to work. (*Id.* ¶ 159.) On March 28, Bonk recommended that Surratt be placed in "Area 605," CTA's now defunct long-term disability scheme that allowed employees to take medical leave without losing their benefits. (*Id.* ¶ 179.) Unlike leave taken under the Family Medical Leave Act ("FMLA"), Area 605 did not guarantee an employee's job upon return. (*Id.*) Generally, CTA placed employees in Area 605 when they had been out for more than sixty days or

---

[2]Defendant denies that Surratt never discussed her diabetes with Bonk.

when they alerted their manager that a medical condition would keep them from working for a considerable length of time. (Def.'s L.R. 56.1(a) Stmt. ¶ 38.)

The CTA claims, and Plaintiff disputes, that Surratt was rushed into Area 605 so that her position could be filled by an active, salaried employee. (*Id.* ¶ 58.) Allowing the position to be filled by non-salaried workers meant paying those workers overtime, an expense the CTA was trying to curtail. (*Id.* ¶ 42, 58.) As a salaried worker, Surratt did not receive overtime. (Pl.'s L.R. 56.1(b) Stmt. ¶ 146.) Surratt had been out for three and a half months the previous year while recovering from surgery from cervical cancer. (*Id.* ¶ 157.) Her medical diagnosis in 2001 is disputed, but CTA doctors appear to have been concerned over her diabetes, hypertension, bronchitis, a growth on her lymph nodes, and the possibility that she had breast cancer. (Pl.'s L.R. 56.1(a) Stmt. ¶¶ 162, 166,167.) She saw CTA doctors on numerous occasions and each time was found unfit to return to work. (*Id.* ¶ 167.) After a biopsy for the lymph node on June 7, she returned to CTA doctors without a work release from her own doctors and again was found unfit. (*Id.*)

Surratt continued to receive full pay but could not work. (Def.'s L.R. 56.1(a) Stmt. ¶ 64.) In August 2001, Plaintiff informed a CTA doctor that her pulmonary specialist had released her to work without restrictions. (Pl.'s L.R. 56.1(b) Stmt. ¶ 169.) The CTA doctor apparently disregarded the lung specialist's finding, declaring her unfit to return to work after a brief consultation and no examination. (*Id.*) In August, Surratt's salary was reduced by half. (Def.'s L.R.56.1(a) Stmt. ¶ 64.)

From August through November, she continued to see CTA doctors but was kept in Area 605 until November 17, 2001. (Pl.'s L.R. 56.1(b) Stmt. ¶ 177; Def.'s L.R. 56.1(a) Stmt. ¶ 68.) In the interim, three men were placed in rail janitor coordinator positions. (Pl.'s L.R. 56.1(b) Stmt. ¶ 177.) By the time Surratt was finally cleared to return to work in November 2001, there was at least one

rail janitor coordinator position available, yet Surratt was not placed until June 20, 2002. (Pl.'s L.R. 56.1(b) Stmt. ¶ 183; Def.'s L.R. 56.1(a) Stmt. ¶ 68.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

## Discussion

As a preliminary matter, Defendant asks us to disregard any discrimination claims made by Plaintiff that fall outside her EEOC charge. Specifically, Defendant would like us to ignore any discriminatory acts occurring before November 26, 2001, the date listed on the EEOC charge as the date of discrimination, as well as those occurring after Plaintiff returned to work on June 20, 2002. We will not honor this request.

A plaintiff may file a Title VII complaint that encompasses only those allegations that fall within the ambit of the predicate EEOC charge. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985). That is, the allegations contained in a Title VII suit must be reasonably related to the

claims asserted in the underlying charge. *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). These requirements afford the EEOC the opportunity to settle the dispute and to give the defendant adequate notice of the charges lodged against it. *Id.*

Surratt's charge states:

> I was employed at [the CTA] in October 1990. I worked as a Coordinator in the Rail Maintenance Division. I was the sole female Coordinator. I went on sick leave in February 2001. When I returned to work on November 26, 2001, I was informed that my job had been filled (by a male) and that there was no comparable position for me. Numerous male Coordinators in the division have been on sick leave, some of them as long or longer than I but all were offered a comparable position, whereas I was not placed in any position.

This provides Defendant with ample notice of the allegations Plaintiff planned to assert against it. Events leading up to her return to work on November 26, 2001, are directly related to the charge. Those occurring after June 20, 2002, are reasonably related to the extent they are able to shed light on her mistreatment. Thus, we will consider all the evidence set before us by Plaintiff.

Plaintiff has not presented us with any direct evidence that CTA discriminated against her based on her gender. However, she may still survive summary judgment under the *McDonnell Douglas* burden-shifting scheme. That formula allows a plaintiff to present indirect evidence to establish a prima facie case. *Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). The employer must respond by articulating a legitimate, non-discriminatory reason for the action taken. *Id.* The burden then shifts back to the employee to show that the employer's proffered reasons are pretext for discrimination. *Id.* A prima facie case is established when the plaintiff can show she was a member of a protected class performing her job satisfactorily who experienced an adverse employment action while similarly situated employees were treated more favorably. *Id.* Defendant does not dispute that Plaintiff was a member of a protected class who did her job well.

The CTA does argue, however, that Surratt suffered no adverse employment decision and can point to no similarly situated male CTA employees who were treated more favorably.

The CTA first claims Surratt was merely inconvenienced when placement could not be arranged for her as rapidly as she would have liked. They note, correctly, that "[n]ot everything that makes an employee unhappy qualifies as an adverse action for Title VII." *Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 505 (2004). An adverse action under Title VII is one that deprives an employee of employment opportunities or otherwise adversely affects her status as an employee. 42 U.S.C. §§ 2000e-2(a)(2).

Plaintiff appears to be alleging three separate adverse actions. First, she insinuates that Bonk arbitrarily ordered her to visit CTA's medical department, then hastily arranged for her to be placed in Area 605 against her wishes. Second, she argues she was unfairly kept in Area 605 long after her own doctor had given her clearance to go back to work, forcing her to sit by, healthy but helpless, as three men filled rail janitor coordinator positions. Third, by the time CTA doctors finally found her medically fit, nearly three months later, at least one position was available but the CTA declined to fill it until June 20, 2002, when Surratt once again became a rail janitor coordinator.

Placing Surratt in Area 605 placed the future of her job in jeopardy. While she maintained her benefits, she was not guaranteed a job when she returned. Thus, placing her in Area 605 adversely affected her status as an employee. Forcing her to linger there indefinitely, past the time when she was declared healthy by her own doctor, deprived her of several employment opportunities and cost her half of her salary for a considerable period of time. Clearly, this was an adverse action. Likewise, finding her fit yet not placing her in an open rail janitor coordinator position for seven months cost her considerable income and was an adverse action.

Defendant next argues that Surratt has not shown us any similarly situated male employees who were more favorably treated. In order to be similarly situated, employees must be similar in all material respects. *Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003). The court must examine all relevant factors to determine if two employees are similarly situated; those factors may vary depending on the context of the case. *Radue v. Kimberly-Clarke Corp.*, 219 F.3d 612, 618 (7th Cir. 2000). "[A]n employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity." *Id.*

Plaintiff points to three men, Robert Porterfield, David Taylor and Samuel Garner. Like Surratt, all three men worked as rail janitor coordinators under Bonk. Unlike Surratt, all three men were eligible for FMLA leave when they were seriously ill. Also unlike Surratt, Taylor and Garner were never sent to Area 605. Only Porterfield was transferred there, but after he had been out for more than sixty days, as is the usual CTA policy. Each man was able to return to his former position when he was medically able to come back to work.

As Defendant argues, Plaintiff has not shown that the male rail janitor coordinators placed in Area 605 were treated by the same doctors and therefore she cannot show they were similarly situated in their return back to the workplace. In order to show disparate treatment between similarly situated employees, the same decisionmaker must be involved. *Little v. Illinois Dept. of Revenue*, 369, 1007, 1012 (7th Cir. 2004). While Bonk was responsible for initially recommending Surratt to Area 605, there is no proof whatsoever that he was behind the decision to keep her there. He did not declare Surratt medically unfit to return. Though Plaintiff seems to hope that we will infer a conspiracy between Bonk and CTA doctors, she does not support this notion. Without such a

connection, and without naming the doctors who declared Porterfield, Taylor and Garner fit to return to work, we cannot find the men similarly situated to Plaintiff in this regard.

Similarly, Bonk does not appear to have been the decisionmaker responsible for not placing Surratt in the open rail janitor coordinator position when she was declared medically fit in November 2001. Bonk's testimony seems to indicate that Richard Jania, the manager of facilities maintenance, would have filled the position. Plaintiff has shown no evidence that Jania treated Surratt differently than Porterfield, who received his old job after returning from Area 605. There is no evidence that Jania was even the decisionmaker in placing Porterfield. Moreover, Porterfield's position had not yet been filled by an active employee, as Surratt's had, so placing him was materially different from placing her. Thus, Surratt has not produced evidence of a similarly situated man who was immediately placed in a new rail janitor coordinator position after returning from Area 605.

Plaintiff fares slightly better in attempting to establish evidence that similarly situated men were not shoved into Area 605 in a suspicious fashion, as she was. As Defendant argues, all three men were eligible to take their leave under FMLA while Surratt was not because a prior illness had kept her off the job for more than one hundred days the previous year, thereby exhausting her leave time for that calendar year. (Pl.'s L.R. 56.1(b) Stmt. ¶ 157.) Surratt dismisses FMLA status as irrelevant to finding the men similarly situated to her. She is mistaken. Plaintiff would have us believe that because Defendant's Area 605 policy does not mention the FMLA, one has nothing to do with the other. However, Plaintiff has admitted that employees were not placed into Area 605 unless they had exhausted the leave afforded to them under FMLA. (Def.'s L.R. 56.1(a) Stmt. ¶ 38.)

Of the three men Plaintiff asks us to consider, only Dave Taylor was FMLA eligible for the entire time he was on medical leave. He was thus ineligible for Area 605 and he was not similarly situated to Surratt. That leaves Robert Porterfield and Samuel Garner, both of whom exhausted their FMLA leave yet were not immediately recommended to Area 605 by Bonk. Porterfield was recommended for transfer around the same time as Surratt, yet this was after he had been out for more than sixty days, as per CTA policy. As Defendant argues, we are not given a timeframe of when Garner was ill and this could constitute a material difference with Surratt. However, it is enough for Plaintiff to point to Porterfield, who was transferred according to CTA policies while Surratt was not, for us to find that a man substantially similar to Plaintiff was treated more favorably.

On this slender reed does Surratt's prima facie case precariously rest. The burden thus shifts to Defendant to articulate a nondiscriminatory reason for placing Surratt in Area 605 in such a unique and seemingly improper manner. Defendant claims that budgetary constraints led to a crackdown on unnecessary overtime expenditures. Placing ill employees into Area 605 meant they could fill those positions with other salaried employers, rather than non-salaried workers who would have to be paid overtime. Defendant also cites Surratt's previous history of extensive sick leave as a motive for rushing her into Area 605.

Thus, it is left to Plaintiff to produce evidence to show that Defendant's proffered reason is pretextual. To establish pretext, "a plaintiff must show that either (1) it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason or (2) that an employer's explanation is not credible." *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). To establish that the employer's explanation is not credible, the plaintiff essentially must show that the employer was lying to cover up the true reason for the adverse action. *Jordan*

*v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). Where the employer offers more than one explanation for taking the adverse employment action, the plaintiff must address all of the suggested reasons to show pretext. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir.1998).

Here, Plaintiff has produced insufficient evidence to show that a discriminatory motive, rather than CTA's budgetary concerns and Surratt's significant absences, was behind the decision to place her in Area 605. She cobbles together a handful of loosely supported, mostly conclusory allegations that Bonk treated her and other women unfairly. Porterfield testified that female clerks told him they were treated differently by Bonk and he remembered one who said Bonk made her cry, though he could not remember the circumstances. (Pl.'s L.R. 56.1 Stmt. ¶ 202.) Several coworkers testified that they had heard from other people that Bonk had told a woman to "[k]iss [his] white ass." (*Id.* ¶ 203.) Bonk told another employee that Surratt was lazy and if Surratt ever worked for him he would fire her. (*Id.* ¶ 206.) Bonk condescended to Surratt and gave her unfairly low evaluations after she returned to work in 2002. (*Id.* ¶¶ 204–211.) Bonk testified that Surratt may have been the only female rail janitor coordinator at the time of her transfer to Area 605. (*Id.* ¶ 185.) Bonk did not recommend a woman for a rail janitor coordinator position until after Surratt filed her lawsuit. (*Id.* ¶ 184.) The sum total of these incidents presents only the slightest of challenges to the CTA's proffered reasons for placing her in Area 605, and does not come close to toppling them.

Plaintiff has also failed to provide sufficient evidence to show that Defendant's proffered reasons are not credible. Instead, Plaintiff attempts to undercut CTA's explanation by accusing Defendant of discovery violations such as failing to fully disclose John Hunter's expected testimony in its initial response to Plaintiff's interrogatories. She has provided no evidence to support her allegations that Defendant acted improperly and though she heads her argument, "Much of

Defendant's Rule 56.1 Statement Should [B]e Stricken," she does not inform us which portions of the statement should be stricken.

Even if we were to ignore the passages we can only assume Plaintiff would have us strike, her cause would not be saved. At best, she would have us disregard facts that help Defendant establish that at the time Surratt was transferred to Area 605, the CTA was particularly concerned with overtime costs. In late February or early March 2001, Hunter, the general manager of CTA's facilities management department and Bonk's boss, issued a directive advising managers like Bonk to recommend transfer of employees on sick leave for thirty days or more to Area 605 for the duration of their leave so that salaried workers could fill their positions. Surratt was out for nearly thirty days when Bonk recommended her to Area 605. Furthermore, Porterfield had exhausted his FMLA yet was not placed in Area 605 until just after the directive was issued. These facts bolster the credibility of Defendant's proffered reason, but taking them away does not expose Defendant's reason as a lie. The burden is on Plaintiff to show that Defendant offers the overtime excuse to cover up a discriminatory motive. That burden has not been met. She has made no argument of pretext. As a consequence, Surratt has not presented sufficient evidence to survive summary judgment.

## Conclusion

For the foregoing reasons, we grant Defendant's motion for summary judgment. Judgment is entered in favor of the Defendant and against Plaintiff. This is a final and appealable order. Plaintiff's motion to strike defendant's reply memorandum in support of its motion for summary judgment is denied. Defendant's motion to strike portions of plaintiff's documents in response to its motion for summary judgment is denied as moot. Plaintiff's motion to strike defendant's motion to strike is therefore denied as moot.

**ENTER:**

*[signature]*

**SENIOR UNITED STATES DISTRICT JUDGE**

**DATED: NOV 22 2004**